☑ Original ☐ Duplicate

CLERK'S OFFICE
A TRUE COPY
Feb 13, 2024
s/ Marilh Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin


# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 24-M-335 (SCD) |
| Electronic devices held in FBI custody in Milwaukee, WI more further described in Attachment A. | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      2-27-24      *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     2-13-24. 10:10 am _____          *Judge's signature*

City and state:     Milwaukee, WI _____          Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                    *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

a.  Amazon tablet

  i.  FBI Milwaukee evidence #1B71

b.  Oneplus cellular phone – IMEI 990016803420304

  i.  FBI Milwaukee evidence #1B40

c.  Black Samsung cellular phone – IMEI 355464110717310

  i.  FBI Milwaukee evidence #1B36

d.  Samsung Galaxy S/9 cellular phone

  i.  FBI Milwaukee evidence #1B31

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Particular Things to be Seized**

42.     All records on the Devices described in Attachment A that relate to violations of 26 United States Code Sections 5841, 5845, 5861(d), and 5871, and 18 United States Code Section 922(g)(3) and (4) (unlawfully possessing a firearm or ammunition by a prohibited person) involving ALEXANDER LAYKOVICH or any other subject, stored on the Devices, to include:

a.  any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

b.  any information recording any targets' schedule or travel;

c.  any web search information related to the offenses described above;

d.  photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

e.  any information related to the proceeds from the robberies described above;

f.  any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

g.  all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

CLERK'S OFFICE
A TRUE COPY
Feb 13, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Electronic devices held in FBI custody in Milwaukee, WI more further described in Attachment A. | ) ) ) ) |

Case No. 24-M-335 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attchment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §§ 5841, 5845, 5861 (d), & 5871; 18 U.S.C. § 922(g) (3) and (4). | Unlawfully possessing a firearm or ammunition by a prohibited person. |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Sean Sweeney, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephone_____ *(specify reliable electronic means)*.

Date: _____02/13/2024_____

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEACH WARRANT

I, Sean Sweeney, being first duly sworn on oath, on information and belief state:

## INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January of 2016. Since July of 2023, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2.      Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (a) instrumentalities, fruits, or evidence of crime, or (b) storage devices for information about crime.

3.      To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally

or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

4.      Based on the investigation to date, I submit that there is probable cause to believe that Alexander Laykovich (DOB XX/XX/1997) knowingly possessed a firearm, to wit, a destructive device, which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 United States Code Sections 5841, 5845, 5861(d), and 5871. Additionally, FBI Milwaukee and FBI Louisville are investigating LAYKOVICH for unlawfully possessing a firearm by a prohibited person in violation of 18 United States Code Section 922(g)(3) and (4).

5.      This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, physical surveillance, and witness statements that I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

6.      Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.      This affidavit is submitted in support of an application for a search warrant for the below-described portable electronic devices, which are currently in possession of the FBI

Milwaukee evidence department, for evidence of the user's possible involvement in the criminal acts described in detail below:

    a.  Amazon tablet

        i.  FBI Milwaukee evidence #1B71

    b.  Oneplus cellular phone – IMEI 990016803420304

        i.  FBI Milwaukee evidence #1B40

    c.  Black Samsung cellular phone – IMEI 355464110717310

        i.  FBI Milwaukee evidence #1B36

    d.  Samsung Galaxy S/9 cellular phone

        i.  FBI Milwaukee evidence #1B31

8.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9.      A traffic stop was conducted by the Lincoln County (Kentucky) Sheriff's Office on or about January 25, 2024, during which time law enforcement officers pulled over a Dodge Challenger, gray in color, bearing Colorado registration tag AIIT98, approximately three miles west of Stanford, Kentucky. The vehicle operator was identified as ALEXANDER MIGUEL LAYKOVICH. At the time of the traffic stop, LAYKOVICH was wearing body armor and was observed to be sitting on a firearm. A subsequent positive K9 hit on the vehicle revealed multiple firearms, including handguns and what appeared to be M4-style long-rifles, along with controlled substances (marijuana, Xanax, and Percocet) and an activated recording device. LAYKOVICH was

arrested by Lincoln County Sheriff's Office for narcotics-related charges and taken to Pulaski County Detention Center.

10.    Special agents with the Bureau of Alcohol, Tobacco, and Firearms and Explosives (ATF) analyzed the firearms and determined LAYKOVICH was in possession of the following: a Franklin Armory lower receiver model FAI-15 (serial # A-31111), a Palmetto State Armory pistol brace rifle model PA-15 (serial # SLB158859), an APF pistol model APF-4 (serial # SF402159), a F.N.H. pistol model FNX-45 Tactical, .45 ACP (serial # FX3U186573), a Glock Model 19X 9x19 caliber (serial # CAHS929), a Taurus Revolver model 605 (serial # AEG519721), a Heritage MPG revolver Rough Rider .22 caliber (serial # 1BH556682), and a Ruger MAX-9 9mm Lueger (serial # 350094372). According to an ATF firearms trace conducted by ATF Special Agent James Freeman, the Taurus revolver and Ruger pistol were both purchased by LAYKOVICH's girlfriend and co-habitant, Julianna Halbrooks, in or about October 2023 in Waukesha, Wisconsin. The Glock pistol was purchased by Halbrooks in or about May 2023 in Waukesha, Wisconsin. The F.N.H. pistol and Franklin Armory lower receiver were purchased by Halbrooks in or about January 2024 in Waukesha, Wisconsin. The Heritage MPG revolver was purchased by LAYKOVICH in or about February 2022 in Springfield, Missouri. The Palmetto State Armory pistol was purchased by LAYKOVICH in or about September 2022 in Springfield, Missouri. The APF pistol was purchased by LAYKOVICH in or about November 2022 in Springfield, Missouri. [1]

---

[1] Firearms traces on the other firearms are currently pending. ATF determined that another device located inside the vehicle was a 37mm smoke/flare launcher.

11.     During a recorded custodial interview after his arrest, LAYKOVICH stated he has a storage unit in Wisconsin. He said he was on his way to Fort Knox related to a letter located in his vehicle concerning an unfavorable finding that was found during his background investigation with the military. LAYKOVICH believed the unfavorable finding was a concealed carry weapon (CCW) charge he had pending.

12.     In April 2023, the Waukesha Police Department conducted a traffic stop on a vehicle LAYKOVICH was driving. During the stop, LAYKOVICH was found to have a concealed Glock 22 handgun for which he did not have a concealed carry permit. In addition, several cigar ends which smelled like marijuana were located. LAYKOVICH was charged with violating Wisconsin State Statute 941.23(2), a misdemeanor. This case is currently pending.

13.     The Lincoln County Sheriff's Department contacted the Brookfield Police Department who connected them with FBI Milwaukee in the morning on January 26, 2024. The Lincoln County Sheriff's Department notified the FBI that LAYKOVICH had been arrested on drug trafficking charges on his way to Fort Knox with multiple firearms, ammunition, body armor, and a body worn camera, said he was a member of a 12-person group, and that he had paperwork in his vehicle pertaining to a storage unit in Brookfield, Wisconsin, at Brookfield Storage, 16580 Pheasant Drive, Brookfield, Wisconsin. LAYKOVICH also stated he lived at his apartment in Brookfield, Wisconsin, with his girlfriend.

14.     A Task Force Officer of the FBI Milwaukee Field Office went to Self Storage of Brookfield located at 16580 Pheasant Drive, Brookfield, Wisconsin, where they spoke

with employees of the facility on January 26, 2024. The employees confirmed LAYKOVICH rents storage unit E 38 which was last accessed on January 20, 2024, between approximately 10:25 am and 10:45 am. Upon revieing video footage from the area, a gray Dodge Challenger was seen at the time the unit was accessed. Employees also noted LAYKOVICH's unit, E 38, has not only the company lock on it but also a personal lock which violates their policy.

15.     A Special Agent and a Task Force Officer of the FBI Milwaukee Field Office conducted an interview of LAYKOVICH's girlfriend, Julianna Halbrooks, at the residence she shares with LAYKOVICH, 1900 Norhardt Drive, Apartment 105, Brookfield, Wisconsin. Halbrook indicated she last saw LAYKOVICH on January 20, 2024. LAYKOVICH told her he was traveling on a Department of Defense (DOD) contract and had been provided a vehicle for the travel. This was the first time LAYKOVICH had this type of contact and Halbrooks was unsure when he would return home. Halbrooks did not know what type of work LAYKOVICH performed for DOD. Halbrooks did not know LAYKOVICH to have many possessions and did not know him to have a storage unit.

16.     Halbrooks stated she owned a .22 caliber Taurus pistol which she kept in a safe in her bedroom. Upon checking the safe during the interview, Halbrooks noticed the pistol was missing.

17.     While conducting the interview in the apartment, the Special Agent and Task Force Officer saw two boxes in plain view on a chair in the kitchen area of the apartment, labeled with explosives warnings. The packages were addressed to

ALEXANDER LAYKOVICH with the apartment address. Halbrooks stated she did not know anything about the contents of the packages.



18.     Halbrooks then provided consent for law enforcement to search the apartment. The two boxes were labeled as 1.4 explosives and shipped from IWA International Inc., 2099 NW 141st St., Unit 11, Pa Locka, Florida. One box was labeled UN0431 Pyrotechnic Articles and the other was labeled UN0454 Igniters. A Milwaukee Police Department (MPD) explosives detection K9 indicated on the boxes. MPD K9s are trained in the detection of explosives and explosive precursors. A K9 indication is a higher level of confidence from the K9 than a change of behavior identified by the handler. These two packages are referred to as "two boxes addressed to Laykovich."

  

19.     In the living room adjacent to the kitchen area, approximately eight feet away, was a green thick aluminum container with a wire located in a box with a battery. FBI Special Agent Bomb Technician Justin Mosiman provided a field assessment that a destructive device could readily be assembled by filling the container with pyrotechnic filler and igniting it with a pyrotechnic ignitor. The combination of these components would constitute a "destructive device" as defined by Title 18 United States Code 921(a)(4)(C). During the search, no other pyrotechnics or materials associated with a hobby involving pyrotechnics were located. Halbrooks indicated she did not know anything about the green container.

  

20.     Special Agent Mosiman seized the two boxes addressed to Laykovich and the green aluminum container with wire and battery described above. The items were taken to the FBI Milwaukee Field Office for safety and storage. The boxes were not opened.

21.     During the consent search, Halbrooks' father and brother were at the apartment. Halbrooks' brother indicated he had previously given Laykovich an Army Field Manual for improvised explosive devices. He also said LAYKOVICH has a pyrotechnics license.

22.     According to information provided by IWA International Inc. to the FBI on or about January 29, 2024, LAYKOVICH placed an order for the following items on January 15, 2024:

Item 1. M11 Multibang-creates 4 audible bang effects.

Item 2. M10 Ball Grenade Marking Device (BBs)- deploys dehydrated peas, not actual BBs.

Item 3. M10 Ball Grenade Marking Device (Chalk)- deploys powder.

Item 4. Mk5 Thunderflash-cardboard stick with a friction cap, that is thrown and gives audible effect a light flash.

Item 5. M15 Large Smoke deployment device-gives off 90 seconds of dense white smoke

Item 6. MJ5 FireWire initiator-fuse used for pyrotechnics

23.     Special Agent Mosiman assessed Items 1 through 5 are devices used as distraction creating devices and all are designed with an integrated mechanical fusing system that initiates when the item is thrown or let go of. Item 6, MJ5 FireWire initiator, is an electric initiator (sometimes referred to as an electric match) designed to electrically initiate pyrotechnics and can be used to electrically initiate any combustible material.

24.     Additionally, Special Agent Mosiman assessed the devices listed as Items 1 through 5 do not require an electric initiator (Item 6) to function. Electric initiators can be used to remotely initiate combustible material including primary and low explosives used in destructive devices such as pipe bombs. No pyrotechnics or primary or low explosives suited to initiation with an electric initiator were located in LAYKOVICH's apartment on January 26, 2024.

25.     The FBI ran LAYKOVICH's information through the National Instant Criminal Background Check System (NICS), and found that on or about January 27, 2023, LAYKOVICH was entered into NICS by the 21st Circuit Court of Missouri. NICS's purpose is to prevent prohibited individuals from purchasing firearms and dangerous weapons. LAYKOVICH was entered into NICS due to 922(g)(4) - Adjudicated or

committed mental defective by the 21st Circuit Court of Missouri. According to these records, LAYKOVICH received a lifetime prohibition from purchasing firearms. These records further revealed that LAYKOVICH attempted to purchase a handgun from Eagle Armory in Springfield, Missouri, on or about February 13, 2023, and the purchase was denied due to this designation. After the time frame when he was denied the purchase of a firearm, LAYKOVICH moved to the Milwaukee, Wisconsin, area.

26. During Lincoln County Sheriffs' Office interview with LAYKOVICH on or about January 25, 2024, which took place after LAYKOVICH had been read his Miranda rights, LAYKOVICH stated he was in inactive status with the U.S. Army. He has previously sought and received medical care from Veteran's Affairs. According to a mental health care provider with Veteran's Affairs in Milwaukee, Wisconsin, LAYKOVICH stated he did not have any firearms, because he believed he was not allowed to have firearms.

27. On January 26, 2024, FBI Milwaukee Special Agents interviewed D.L., an immediate relative of LAYKOVICH, who recalled LAYKOVICH has had psychotic episodes in the past. In or around 2017, D.L. recalled LAYKOVICH entered her home wearing body armor and brandishing a firearm. D.L. was afraid LAYKOVICH could hurt her or someone else. A.L., also an immediate relative of LAYKOVICH, also recalled the psychotic incident in or around 2017, and stated she believed LAYKOVICH was going to kill her and D.L. A.L. also recalled when LAYKOVICH was living in Missouri, he had another psychotic episode and was involuntarily committed to an institution for a mental

evaluation. A.L. recalled LAYKOVICH suffered from another psychotic episode in Wisconsin and again was committed to an institution for another mental evaluation.

28.     During the law enforcement interview with LAYKOVICH on January 25, 2024, LAYKOVICH said he was disabled and going into intensive care management for post-traumatic stress disorder (PTSD), traumatic brain injury (TBI), and stroke. During the interview with deputies, LAYKOVICH further said he is currently under the care of a psychiatrist and is prescribed anti-anxiety medication. According to D.L., LAYKOVICH has cancer of the neck and spine, and requires medications to treat the cancer. D.L. provided LAYKOVICH is prescribed medication for ADHD and for his mental health, but provided LAYKOVICH does not like to take those medications. 10. According to D.L., she believes LAYKOVICH is on methamphetamine because of the way he acts and moves but has not actually seen him use methamphetamine. According to A.L., she knows LAYKOVICH is using methamphetamines, and has also been told by LAYKOVICH he is using harder drugs. According to A.L., the mixture of cancer medications, ADHD medications, and methamphetamine cause LAYKOVICH to become extremely unstable. A.L. stressed to FBI her belief LAYKOVICH does not need to be in the possession of firearms.

29.     As previously mentioned, law enforcement located 1 gram of marijuana, 2 Xanax pills, and 5 Percocet pills inside the vehicle operated by LAYKOVICH on or about January 25, 2024. The Xanax and Percocet pills were not properly stored within a prescription container. During his interview with Lincoln County Sheriff's Office deputies, LAYKOVICH also stated he used Cannabidiol (CBD) and "smoked some

weed" when he lived in Missouri. Law enforcement in Missouri contacted S.K., who was in a romantic relationship with LAYKOVICH from approximately 2020 to 2022. S.K. stated LAYKOVICH was a frequent user of drugs and had mental health issues. S.K. stated on an occasion when they were together, LAYKOVICH got mad at her family member and accused her of stealing his methamphetamine. S.K. stated she has not had contact with LAYKOVICH since the time they separated in or around 2022.

30.     Given the history of drug use reported by D.L., A.L, and S.K.; the traffic stop in April 2023, wherein he was found with cigar ends that smelled like marijuana; the possession of marijuana and other improperly stored controlled substances; and LAYKOVICH's statement to law enforcement that he smoked weed, there is probable cause to believe that LAYKOVICH is an "unlawful user" of controlled substances for purposes of 18 U.S.C. § 922(g)(3). He was thus a prohibited person, and his possession of a firearm was unlawful under the same statute.

31.     On January 28, 2024, an arrest warrant via complaint was issued by United States Magistrate Judge Matthew A. Stinnett of the United States District Court, Eastern District of Kentucky (5:24-mj-5039), for the arrest of LAYKOVICH for violation of 18 U.S.C. §§ 924(g)(3) (Unlawful Possession of a Firearm by a Person Adjudicated as a Mental Defective or Committed to a Mental Institution) and 924(g)(4) (Unlawful Possession of a Firearm by an Unlawful User of or Addicted to Any Controlled Substance), based on the firearms located during the above described traffic stop in Kentucky.

32.     Based on the foregoing information, there is probable cause to believe that LAYKOVICH "has been adjudicated as a mental defective or has been committed to a mental institution" for purposes of 18 U.S.C. § 922(g)(4). He was thus a prohibited person and his possession of a firearm, knowing he was a prohibited person, was unlawful under the same statute.

33.     On January 31, 2024, investigators executed a search, pursuant to a warrant, of LAYKOVICH's storage unit at the premises known as Self Storage of Brookfield, Unit E38, located at 16580 Pheasant Drive, Brookfield, Wisconsin. During the search, investigators discovered approximately 15 firearms, many thousands of rounds of ammunition, and four 1-pound containers of ammonium nitrate and aluminum (commonly referred to as exploding target mix). Two of the containers had the ammonium nitrate and aluminum powder pre-mixed. Also, during the search, investigators discovered the mobile devices described in Paragraph 7.

34.     Based on my training and experience, I know that when someone has a storage unit, they maintain some of their possessions in that unit. These possessions can include firearms and components for destructive devices, and that is particularly likely if they store destructive device components to their primary residence and have such components shipped to their primary residence. Based on the presence of the mobile devices within LAYKOVICH's storage unit, and their close proximity to the firearms and explosives within the storage unit, it is reasonable to believe that the mobile devices are LAYKOVICH's property, and it is also reasonable to believe that the contents of the

mobile devices could contain additional digital evidence of the crimes for which LAYKOVICH is under investigation.

## RELEVANT STATUTES

Title 26 United States Code 5861 makes it unlawful to possess or manufacture an unregistered firearm. The definition of a firearm includes a destructive device. Title 18 U.S.C. § 921(a)(4)(A) defines a destructive device as any explosive, incendiary, or poison gas- bomb, grenade, rocket, missile, mine, or device similar to any device described. Title 18 U.S.C. § 921(a)(4)(C) also defines a destructive device as any combination of parts intended for converting any device into a destructive device. Under Sections 5821(b), 5822, and 5841 of the National Firearms Act, Title 26 U.S.C., Chapter 53, a person must apply and be granted permission to make and register a firearm, to include a destructive device. The application includes a description of the device. Based on information I have received from a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), items such as those described above as located in the consensual search of LAYKOVICH's apartment and what is believed to be in the boxes addressed to Laykovich located near those items would make a destructive device which would not be a legitimate device for which an NFA would be granted.

Title 18 United States Code 922(g)(3) makes it unlawful to possess a firearm or ammunition by an individual who is an unlawful user of or addicted to any controlled substance. Title 18 United States Code 922(g)(4) makes it unlawful to possess a firearm by an individual who has been adjudicated as a mental defective or has been committed to a mental institution.

## TECHNICAL TERMS

35.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also

include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna

can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

   f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

36.     Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that the electronic Devices described above have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation

device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices.  This information can sometimes be recovered with forensics tools.

38.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

39.     *Nature of examination*.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40.     *Manner of execution*.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

41. Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which is more particularly described in Attachment A, and which are currently located at FBI Milwaukee, for evidence of the aforementioned criminal acts, including but not limited to the information contained in Attachment B.

# **ATTACHMENT A**

## **Property to Be Searched**

a.  Amazon tablet

      i.  FBI Milwaukee evidence #1B71

b.  Oneplus cellular phone – IMEI 990016803420304

      i.  FBI Milwaukee evidence #1B40

c.  Black Samsung cellular phone – IMEI 355464110717310

      i.  FBI Milwaukee evidence #1B36

d.  Samsung Galaxy S/9 cellular phone

      i.  FBI Milwaukee evidence #1B31

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Particular Things to be Seized**

42.     All records on the Devices described in Attachment A that relate to violations of 26 United States Code Sections 5841, 5845, 5861(d), and 5871, and 18 United States Code Section 922(g)(3) and (4) (unlawfully possessing a firearm or ammunition by a prohibited person) involving ALEXANDER LAYKOVICH or any other subject, stored on the Devices, to include:

a.  any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

b.  any information recording any targets' schedule or travel;

c.  any web search information related to the offenses described above;

d.  photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

e.  any information related to the proceeds from the robberies described above;

f.  any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

g.  all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.